UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
GINA DEFRANCESCO, :
:
                    Plaintiff, : 10 Civ. 8193 (TPG)
:
   – against – : **OPINION**
:
ANTHONY BOTTALICO as General :
Chairman, et al., :
:
                    Defendants. :
------------------------------------------------x

     This case arises out of plaintiff Gina DeFrancesco's repeated refusal to use an electronic Ticket Issuing Machine ("TIM"), in violation of Metro-North Railroad's ("Metro-North") direction to do so, and her subsequent termination from Metro-North. DeFrancesco claims that Metro-North breached the collective bargaining agreement ("CBA") between it and the Association of Railroad Employees ("ACRE"), and that ACRE breached its duty of fair representation. On the latter claim, DeFrancesco sued ACRE and Anthony Bottalico of ACRE. DeFrancesco also brings state law claims for intentional infliction of emotional distress and tortuous interference with contract.

     Metro-North moves for judgment on the pleadings pursuant to Rule 12(c). Bottalico and ACRE have filed a separate motion for judgment on the pleadings. The court grants both motions.

**FACTS**

The following facts are assumed to be true for purposes of this memorandum and are taken solely from DeFrancesco's amended complaint ("the complaint") and items incorporated into DeFrancesco's complaint by reference.

DeFrancesco was an Assistant Conductor employed by Metro-North and is a member of ACRE. ACRE is a union that represents conductors employed by Metro-North. Anthony Bottalico is the General Chairman of ACRE. ACRE and Metro-North are parties to a collective bargaining agreement, which governs the discipline and grievance process for unionmembers employed by Metro-North. DeFrancesco was disciplined by Metro-North on October 21, 2009 and November 16, 2009, and discharged on November 16, 2009.

The CBA Discipline and Grievance Process

Pursuant to the CBA, no employee is to be reprimanded, disciplined, suspended or dismissed until a Metro-North officer conducts a fair and impartial investigation. The CBA does not refer to an investigation in the ordinary sense of the word, but rather, a hearing in which the employee is represented by an ACRE representative, and she and other witnesses are questioned by a Metro-North Hearing Officer and the ACRE representative. Thus, when the CBA uses the term investigation, it is really referring to a trial-like hearing in which facts are

presented. In fact, the CBA sometimes refers to this investigation as a "trial."

Under certain circumstances, an employee may be held out of service pending such investigation and decision. The CBA provides that an employee will only be held out of service pending investigation for a "serious acts or occurrence," which includes a violation of Rule G, insubordination, extreme negligence, and stealing. The CBA provides that an employee will not be held out of service pending investigation and decision in cases that are not serious acts or occurrences. Yet, contradictorily, the CBA provides that if an employee is held out of service pending investigation and decision for other than a serious act or occurrence, he will be paid what he would have earned had he not been held out of service, excluding the day of the formal investigation, if he is disciplined.

An employee directed to attend an investigation will be notified in writing within seven days of the date of the occurrence. Before the investigation, the union and Metro-North must attempt to resolve the matter. If these efforts are unsuccessful, the investigation proceeds. At this trial-like proceeding before a Metro-North officer, an employee who may be subject to discipline has the right to present witnesses with information relevant to the investigation, to present testimony. Metro-North orders employee witnesses to be in attendance if the employee under investigation requests their attendance. The employee and his

union representative have the right to be present during the entire investigation.

If the employee finds the discipline imposed to be unjust, the employee may appeal to the Assistant Director of Labor Relations.  The decision of the Assistant Director of Labor Relations is final and binding unless ACRE appeals that decision to the Highest Appeals Officer.

The decision of the Highest Appeals Officer may be appealed to the Special Board of Adjustment.  The Special Board of Adjustment is a panel composed of three arbitrators: one selected by Metro-North, one by ACRE, and a neutral arbitrator selected by both parties.

DeFrancesco's Infractions, Discipline, and Grievance

On or about August 18, 2008, DeFrancesco was issued a TIM to use in the course of her work.  A TIM is a hand-held electronic device that records every sales transaction a crew member makes and is used for on-board ticket sales and revenue transactions in passenger trains. It collects information such as the type of fare, amount of fare, cash tendered, cash remitted, and change, and issues receipts.  Metro-North required conductors to use TIMs.

In late 2008, DeFrancesco refused to use the TIM, but was repeatedly warned by union officials that she should use the TIM. However, DeFrancesco did not use the TIM because she thought it was unsafe.  She was trying to become pregnant and thought that it might be dangerous to have a TIM in contact with her body.  DeFrancesco had

been informed by a medical professional in October 2008, and later by one Dr. Salimbene, that she should not use the TIM.  DeFrancesco alleges that at some point she provided Metro-North with a doctor's note in an effort to be excused from being required to use the TIM, but to no avail.

Around January 24, 2009, DeFrancesco was notified that she would be discharged if she did not wear the TIM.  She claims she started wearing the TIM to save her job, despite her fear that it might be dangerous to her pregnancy to use a TIM.  DeFrancesco had heard that another pregnant conductor who wore a TIM had a miscarriage.  At some point in March 2009, she thought she was pregnant but continued to wear the TIM out of fear of losing her job.  Using the TIM caused DeFrancesco anxiety and emotional distress, of which she informed Metro-North and ACRE.

Once her pregnancy was confirmed on April 1, 2009, she stopped using the TIM.  However, in May 2009, DeFrancesco was repeatedly warned by both Metro-North and ACRE that she must wear a TIM or else she would lose her job.  DeFrancesco received one such warning on or about May 12, 2009.  Although DeFrancesco sought ACRE's assistance in challenging this Metro-North rule, DeFrancesco alleges that the union sided with Metro-North and warned her that she would lose her job unless she used the TIM.

It is unclear from DeFrancesco's complaint whether she began wearing her TIM again on May 12, 2009 after her job was threatened, but on May 15, 2009, she was hospitalized and she suffered a miscarriage. DeFrancesco alleges that ACRE and Metro-North's behavior in harassing her to wear a TIM, as well as the fear of miscarriage resulting from use of the TIM, caused her great anxiety and emotional distress that led to her suffering a miscarriage.

When DeFrancesco returned to work after her hospitalization, she was informed that she was on a list of people who was not using a TIM. DeFrancesco alleges that not every conductor was required to use the TIM and that the defendants appeared to be harassing DeFrancesco more than they harassed other conductors.

On July 13, 2009, DeFrancesco requested by letter that she be relieved of the obligation to wear a TIM because she was attempting to become pregnant again.  DeFrancesco alleged she never received a response to this letter, but she did confront Ronald Yee of Metro-North, who informed her that another Metro-North employee had ordered him to tell DeFrancesco that she had to wear the TIM.

Undeterred, DeFrancesco continued to seek an exemption from the TIM requirement and ultimately was informed that if she did not want to wear the TIM, she could take a "yard job" that would require her to work outdoors, until late in the night, and wear a radio on her waist. DeFrancesco thought this was a dangerous job for a pregnant woman

and that this offered accommodation was a punishment for failing to wear a TIM. DeFrancesco also thought that using a radio might lead to complications with her pregnancy.

On August 18, 2009, DeFrancesco sent Metro-North a letter and a doctor's note, requesting a reasonable accommodation so that she could be exempted from the TIM requirement. The next day, Metro-North and ACRE circulated a memorandum to all employees indicating that if they requested accommodation relating to the TIM, they should contact a designated Metro-North employee, Linda Kenwood. DeFrancesco alleges that this memorandum was referred to by employees as the "Gina Memo" and caused her humiliation, embarrassment, and distress.

After DeFrancesco received this memorandum, DeFrancesco's husband called Metro-North, seeking an accommodation, but to no avail. DeFrancesco subsequently sent yet another request for an accommodation on September 2, 2009. DeFrancesco does not indicate whether she ever received a response to this request.

On September 4, 2009, DeFrancesco was taken out of service for failing to use a TIM and ordered to appear at an October 15, 2009 disciplinary proceeding. DeFrancesco was charged with conduct unbecoming a Metro North employee because she failed to use a ticket machine between August 6, 2009 and September 2, 2009. DeFrancesco claims she was not paid while she was out of service.

At DeFrancesco's investigation, a Metro North employee served as both the judge and Metro-North representative. DeFrancesco was represented by Lloyd Fishbach of ACRE, who objected to various questions raised by Metro-North. DeFrancesco was found guilty and disciplined – she was given 52 days time out of service with an additional 30 days deferred.

After she returned to work on October 28, 2009, DeFrancesco was again told to use a TIM, but refused, and was taken out of service that day. The next day she again refused to wear the TIM and was taken out of service again. DeFrancesco was charged with insubordination for refusing to wear a TIM.

DeFrancesco appeared at an investigation on November 10, 2009. At this investigation, Lloyd Fishbach of ACRE again represented DeFrancesco. DeFrancesco was found guilty of insubordination and terminated from work. After DeFrancesco was terminated, ACRE stated that it would appeal the decision. DeFrancesco ordered ACRE not to appeal the decision. ACRE appealed the decision to the Special Board of Adjustment anyway. On April 28, 2010, the arbitrator rendered a decision upholding DeFrancesco's termination.

The Claims

DeFrancesco's first claim is that ACRE breached its duty of fair representation because of an alleged conflict of interest, which she claims prevented ACRE from fairly representing her in the course of her

disciplinary proceedings. Approximately two-thirds of the salary of Anthony Bottalico, the general chairman of ACRE, is paid by Metro-North. DeFrancesco alleges that in order for Bottalico to continue receiving this payment, he must support Metro-North's policies instead of the best interests of ACRE members. DeFrancesco claims that this conflict of interest made Bottalico want to appeal so as to obtain an arbitrator's award adverse to DeFrancesco. According to DeFrancesco, this adverse arbitration award would then allow Metro-North to be in a position to claim that a separate lawsuit filed by DeFrancesco in the New York Supreme Court should be dismissed based on collateral estoppel.

DeFrancesco's second claim is that Metro-North breached the CBA. DeFrancesco alleges that Metro-North violated various provisions of the CBA, including Rules 24, 26(a), and 26(a)(2). DeFrancesco refers to Rule 26(a)(2) in her complaint and in her opposition to this motion. However, upon a review of the CBA, there does not appear to be a Rule 26(a)(2). However, Rule 26(b)(2) appears to be the rule that DeFrancesco is referring to and its subject matter matches DeFrancesco's description of it. Accordingly, construing the complaint liberally in DeFrancesco's favor, the court will consider whether DeFrancesco has pleaded a breach of Rule 26(b)(2).

These provisions govern the selection of arbitrators for the Special Board of Adjustment, the investigation that must be undertaken before

discipline, and whether DeFrancesco had a right to compensation while she was taken out of service.

DeFrancesco's third cause of action is for intentional infliction of emotional distress.  DeFrancesco claims that Metro-North's conduct was outrageous and was done solely to intimidate her and other conductors, and that such conduct caused her emotional distress.

DeFrancesco's fourth cause of action alleges that Metro-North tortuously interfered with an agreement between DeFrancesco and ACRE, pursuant to which ACRE agrees to be DeFrancesco's bargaining representative and protect her from Metro North.  Although DeFrancesco does not indicate what contract she is referring to, presumably she is referring to the CBA.  DeFrancesco alleges that ACRE's payment of a portion of Bottalico's salary, as detailed above, induced Bottalico to breach the contract between ACRE and DeFrancesco.

Defendants answered and moved for judgment on the pleadings with respect to all of DeFrancesco's claims.  Defendants have submitted transcripts of DeFrancesco's disciplinary hearings, the CBA, the decision of the Special Adjustment Board, and copies of various notices provided to DeFrancesco, all of which are referred to in the complaint.

## DISCUSSION

"Hybrid" Labor Law Claims

An employee subject to a CBA, who alleges discharge without just cause is normally bound by the result of the CBA-governed grievance

procedure, even if a meritorious grievance was lost because of poor judgment on the part of the union officials who handled the grievance. See Vaca v. Sipes, 386 U.S. 171, 184-86 (1967). The principal exception to this rule arises where an employee can prove that the grievance was lost because, in handling the grievance, the union breached its duty of fair representation. Id. at 186. Such a claim is labeled "hybrid" because in order to prevail, an employee must show both that the employer breached the CBA and that employee failed in his grievance against such breach because the union breached its duty of fair representation. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983).

Duty of Fair Representation

A court's review of a union's representation is deferential. Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 78 (1991). A breach of the duty of fair representation will be found only if the union's actions were "arbitrary, discriminatory, or in bad faith." Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010). In other words, mere negligence, poor judgment, or ineptitude on the part of union officials in representing a grievant is not actionable. See Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43-44 (2d Cir. 1989).

DeFrancesco has not established that ACRE's representation of her was arbitrary. A union decision is arbitrary only if it lacks a rational basis. Spellacy v. Airline Pilots Association-International, 156 F.3d 120, 127 (2d Cir. 1998). DeFrancesco does not point to any facts plausibly

suggesting that ACRE's representation was irrational throughout its representation of her in numerous hearings and in the filing of an appellate brief. DeFrancesco's apparent dissatisfaction with the outcome of her representation does not make that representation irrational. DeFrancesco argues that she had demanded that ACRE <u>not</u> file an appeal, but that ACRE filed one anyway, and that she was not informed of the date and time of the appeal, but union representatives have substantial discretion to determine whether and how to process grievances. See <u>Vaca</u>, 386 U.S. at 191-93. Even if DeFrancesco did not want her union to file an appeal, the decision to proceed to arbitration is a "discretionary determination to be made by the union." See <u>Carrion v. Local 32B-32J Service Employees Int'l Union, AFL-CIO</u>, No. 03 Civ. 1896 (THK), 2005 U.S. Dist. LEXIS 4417, at *21 (S.D.N.Y. Mar. 21, 2005). DeFrancesco has not alleged facts plausibly showing that the union reached this discretionary decision without a rational basis or made irrational arguments in its appellate brief. Nor has DeFrancesco cited any case in which a union was found to have breached its duty of fair representation by pursuing an appeal more vigorously than the unionmember wished, as DeFrancesco alleges here.

Similarly, DeFrancesco has not established that the union's actions were discriminatory. A union's actions are discriminatory if they are "invidious" or "unlawful." <u>O'Neill</u>, 499 U.S. at 81. DeFrancesco claims that certain conductors were not required to use the TIM, but that

she was.  However, DeFrancesco fails to take the next step of plausibly alleging facts in support of her claim that this difference in treatment was the result of invidious or unlawful discrimination.  See Haerum v. Air Line Pilots Ass'n, 892 F.2d 216, 221-22 (2d Cir. 1989) ("A showing that a union's action has disadvantaged a group of members, without more, does not establish a breach of the duty of fair representation.").

Finally, DeFrancesco has not plausibly alleged that ACRE acted in bad faith.  A union official acts in bad faith when he acts with an "improper intent, purpose, or motive."  Spellacy, 156 F.3d at 126.  DeFrancesco appears to be arguing that Bottalico acted in bad faith because some of his salary was being paid by MetroNorth and that this amounted to a conflict of interest, because he was motivated to support the interests of Metro-North and not DeFrancesco.  The court notes that it does not seem unusual for a unionmember's salary to be paid by the employer because the unionmember works for the employer.  DeFrancesco has not set forth any facts supporting a claim that these payments led ACRE to act in bad faith.  In a recent case that was similar to this case, Judge Swain persuasively rejected the same theory that DeFrancesco is now advancing.  See Giglietti v. Bottalico, No. 10 Civ. 3652 (LTS), 2011 U.S. Dist. LEXIS 56921, at *18 (S.D.N.Y. May 26, 2011) ("The pleading and the memos relating to payments by Metro-North to union officials make it clear that this compensation structure has been in place for at least ten years at Metro North.  In and of itself, the

compensation structure is insufficient to support an inference that the Union does not represent its members in an appropriate fashion, much less that Bottalico or ACRE acted with an improper intent, purpose or motive.").

To the contrary, DeFrancesco's complaint and the court's review of the record demonstrate that despite the payments Bottalico received, ACRE zealously represented DeFrancesco throughout every stage of her proceedings, including filing an appellate brief on her behalf.  At the investigations conducted by Metro-North, DeFrancesco's representative, Lloyd Fischbeck, often objected that testimony offered against DeFrancesco was outside the scope of the charges against her.  He attempted to cross-examine Metro-North representatives on the theory that they had treated DeFrancesco more harshly than other employees who failed to use the TIM.  He also sought to prove that Metro-North had not undertaken an adequate review of the safety of the TIM for pregnant women before rejecting DeFrancesco's requests for a medical accommodation.  Although ACRE was unsuccessful in its efforts on DeFrancesco's behalf, there are no facts plausibly suggesting that it acted in bad faith.

Accordingly, DeFrancesco's claim for breach of the duty of fair representation must be dismissed.

Breach of the CBA

DeFrancesco's hybrid labor law claim requires a showing both that the union breached its duty of fair representation and that the employer breached the CBA. See White v. White Rose Food, 237 F.3d 174, 178-79 (2d Cir. 2001). Because DeFrancesco has failed to state a claim for breach of the duty of fair representation, her claim for breach of the CBA must fail as well. See id. The court would be in order in dismissing this claim without substantively considering it because DeFrancesco has not sufficiently pleaded the threshold requirement of a breach of the duty of fair representation. See Giglietti, 2011 U.S. Dist. LEXIS 56921, at *20.

However, the court will consider the merits of her claim of violation of the CBA.

DeFrancesco alleges that Metro-North breached CBA Rules 24 and 26 by selecting all three arbitrators. Rule 24 permits both Metro-North and ACRE to appoint an arbitrator and then agree on a neutral arbitrator. DeFrancesco's theory is that Metro-North's payment of Bottalico's salary means that Metro-North effectively had an influence on how all of the arbitrators were picked and, consequently, on the fairness of the appeals and hearings, in violation of Rules 24 and 26. However, as discussed above, it is not abnormal for a member of a union to have his salary paid by the employer, and DeFrancesco does not provide facts in support of her allegation of improper influence. The compensation

structure alone does not support a claim of improper influence by Metro-North.

Second, DeFrancesco alleges that Metro-North did not undertake an impartial investigation, in violation of Rule 26(a), because DeFrancesco could not call witnesses at her investigation and because of the involvement of Metro-North officers in her investigation.  As described above, when the CBA refers to an impartial "investigation," it is referring to a trial-like proceeding before a Hearing Officer as opposed to an investigation in the ordinary sense.  DeFrancesco's claim under Rule 26(a) must be rejected because the CBA requires that the fair and impartial investigation be conducted by a <u>Metro-North officer</u>.  Therefore, Metro-North's involvement in the investigation cannot in and of itself be a breach of Rule 26(a).

With respect to Metro-North not allowing DeFrancesco to call witnesses, Rule 26(a), which DeFrancesco cites, does not refer to witnesses, but Rule 26(d)(2), which DeFrancesco does not refer to, provides that an "employee who may be subject to discipline will have the right to present witnesses who have relevant information relating to the act or occurrence."  In her complaint and opposition papers, DeFrancesco has simply stated that she was not allowed to present witnesses at her hearing.  However, she has not indicated what witness she attempted to call at the hearing or the substance of their proposed

testimony.  Thus, she has provided no factual amplification to this allegation, which merely tracks the language of Rule 26(d)(2) of the CBA.

Despite DeFrancesco's failure to indicate who she attempted to call as a witness at her disciplinary hearings, the court has reviewed the record and determined that DeFrancesco did attempt to call Linda Kenwood as a witness at the November 10, 2009 investigation.  Linda Kenwood is the Metro-North employee who denied DeFrancesco's request for an exemption from the TIM requirement.  The Metro-North Hearing Officer denied DeFrancesco's request on the grounds that Linda Kenwood could not possibly have any relevant information to add to the investigation.   This appears to be the only witness that DeFrancesco was unable to call in her defense.  The denial of this request has some plausibility, because it is difficult to see how the person who decided against the plaintiff would have been able to provide testimony helpful to her case.  But it is also possible that the person who signed the letter denying DeFrancesco's reasonable accommodation request could have offered relevant information about the basis for Metro-North's rejection of DeFrancesco's reasonable accommodation request.  However, because DeFrancesco has not referred to Kenwood, the court will not find that DeFrancesco would state a plausible claim for breach of the CBA on this basis.

Third, DeFrancesco alleges that she was not compensated when she was taken out of service, in violation of the CBA. In their motions for judgments on the pleadings, defendants have not substantively addressed this allegation. The CBA requires that an employee be compensated between the time the employee is taken out of service and a disciplinary hearing, except when the employee is being disciplined for a serious occurrence, which is defined as "'Rule G,' Insubordination, Extreme Negligence, [or] Stealing." See CBA, Rules 26(b)(1)-(2). Here, DeFrancesco was taken out of service twice, once for conduct unbecoming a Metro-North employee and once for insubordination. Under the terms of the CBA, it appears that DeFrancesco was entitled to compensation while she was out of service for conduct unbecoming a Metro-North employee because conduct unbecoming a Metro-North employee is not defined as a serious act or occurrence, but not while she was out of service for insubordination, which is defined as a serious occurrence. See id. Accordingly, DeFrancesco may state a claim for breach of Rule 26(b)(2) because she was not paid when she was out of service for conduct unbecoming a Metro-North employee.

After analyzing the merits of DeFrancesco's claim for breach of the CBA, the court concludes that she has not pleaded any valid claim to this effect, with the possible exception of showing entitlement to payment

for one period while she was out of service. But as indicated before, there can be no recovery for violation of the CBA in this type of action absent showing of a breach of the duty of fair representation. See White, 237 F.3d at 178-79; Giglietti, 2011 U.S. Dist. LEXIS 56921, at *20. Therefore, DeFrancesco's claim for breach of the CBA must be dismissed.

State Law Claims

With the dismissal of the federal claims, the court declines to retain jurisdiction over plaintiff's state law claims. See 18 U.S.C. Sect. 1367(c).

**CONCLUSION**

The court grants both motions for judgment on the pleadings and dismisses all of plaintiff's claims.

SO ORDERED.

Dated: New York, New York
       December 16, 2011

_____
Thomas P. Griesa
U.S. District Judge